UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ivy Hocking,                                              Civil No. 17-1620 (FLN)

      Plaintiff,

      v.                                                     **ORDER**

Nancy A. Berryhill,
Acting Commissioner of Social Security,

      Defendant.

___

Stephanie Balmer for Plaintiff.
Bahram Samie, Assistant United States Attorney, for Defendant.

___

Plaintiff Ivy Hocking seeks judicial review of the final decision of Nancy Berryhill the former Acting Commissioner ("Commissioner") of the Social Security Administration ("SSA"), who denied her application for disability insurance benefits under Title II of the Social Security Act. ECF No. 1. This Court has jurisdiction over the claim pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), 28 U.S.C. § 636(c), and Rule 73 of the Federal Rules of Civil Procedure. The parties have submitted cross motions for summary judgement. *See* ECF Nos. 8 and 11. For the reasons set forth below, the Commissioner's decision is **AFFIRMED** and the case is **DISMISSED WITH PREJUDICE**.

## I. INTRODUCTION

On May 2, 2013, Hocking applied for disability insurance benefits ("DIB"). Administrative Record [hereinafter "AR"] 141–45, ECF No. 7. She alleged her disability began on April 10, 2013. AR 141. Hocking's application was denied initially on September 24, 2013, and upon reconsideration on May 29, 2014. *See* AR 102–10. An administrative hearing was held before

Administrative Law Judge ("ALJ") Virginia Kuhn on November 3, 2015. AR 45–81. The ALJ returned an unfavorable decision and denied Hocking's application for DIB on January 19, 2016. AR 24–44. On March 24, 2017, the SSA Appeals Council denied Hocking's request for review and finalized the ALJ's decision for judicial review. AR 1–6; *see* 20 C.F.R. § 404.981. On May 16, 2017, Hocking commenced this civil action seeking an award of disability benefits, or in the alternative, remand for further proceedings. ECF No. 1 at 6.

## II. FACTUAL BACKGROUND

### A. Background

Hocking was fifty-six years old when she filed her application for DIB. AR 231–40; 20 C.F.R. § 404.1563(d). She has at least a high school education and past relevant work as a seasonal state parks employee. AR 166–67. Hocking claims the following severe impairments prevent her from securing and maintaining competitive employment: cumulative affects of breast and thyroid cancer; late side effects of recurrent breast and thyroid cancer; late side effects of cancer treatment and reoccurrence; post-chemotherapy cognitive impairment; thyroid hormone replacement therapy maintenance and long term challenges; and "premature Oogensis – BC HRT contraindicated." AR 166.

### B. The Commissioner's Decision

On January 22, 2016, the ALJ issued a decision that Hocking was not disabled and not entitled to DIB. AR 24–44. In determining that Hocking was not disabled, the ALJ followed the five-step sequential process established by the SSA. *See* 20 C.F.R. § 404.1520(a)(4).

The first step in the sequential evaluation is to evaluate the claimant's work history to determine if they are engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.15071, 416.971.

If the claimant has performed substantial work activity then he is not disabled. *Id.* At step one, the ALJ found that Hocking had not engaged in substantial gainful activity since October 19, 2012. AR 29. The ALJ noted that Hocking received $898 from her employer in 2013, but found that payment did not qualify as substantial gainful activity. *Id.*

In the second step of the sequential evaluation, the ALJ determines whether the claimant has a severe, medically-determinable impairment, or combination of impairments, that significantly limits the individual's ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). At step two, the ALJ found that Hocking had the following severe impairments: anxiety disorder, and mild cognitive disorder. AR 29; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step in the sequential process looks at whether the claimant has an impairment that meets or equals one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1; 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If, at this step, the ALJ finds that the claimant's impairments or combination of impairments does not meet or medically equal the criteria of a listing, nor meet the duration requirement, then the analysis must proceed to the next step. At this step, the ALJ found that Hocking did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 30.

Because Hocking's impairments did not meet or equal one of the listings in Appendix 1, the ALJ made an assessment of the Hocking's Residual Functional Capacity ("RFC"). Here, the ALJ concluded that Hocking had an RFC to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: routine repetitive fixed and predictable tasks and instructions that would not involve a strict production rate pace and that being fixed and predictable would have minimal, if any, workplace changes in terms of tasks, instructions, and work processes from day to day.

3

AR 32.

In the fourth and fifth steps of the sequential evaluation process, the ALJ must determine whether the claimant has the RFC to perform either her past relevant work or any other jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1512(g), 404.1520(f), 404.1560(c), 416.912(g), 416.920(g), 416.960(c). If the claimant cannot perform her past relevant work, then the "burden shifts to the SSA to prove, first, that the claimant retains the [RFC] to perform other kinds of work, and, second, that other such work exists in substantial numbers in the national economy." *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000).

At step four, the ALJ found that Hocking was not able to perform her past relevant work. AR 38. This determination was based on the Vocational Expert's ("VE") testimony that Hocking's past relevant work exceeded her RFC. *Id*.

However, at step five, the ALJ concluded that considering Hocking's age, education, work experience, and RFC there were jobs in significant numbers in the national economy that she could perform with some non-exertional limitations. AR 38. The VE testified that Hocking could perform work as a hand packager with 8,000 jobs in Minnesota and 600,000 nationally, machine packager with 4,000 jobs in Minnesota and 60,000 jobs nationally, and machine feeder with 2,000 jobs in Minnesota and 90,000 nationally. AR 39. The ALJ found the VE's testimony was reasonable, persuasive, and consistent with the information contained in the Dictionary of Occupational Titles. *Id.* As a result, the ALJ concluded that Hocking was capable of making a successful adjustment to other work that existed in significant numbers in the national economy, and was not disabled. *Id.*

## III. STANDARD OF REVIEW

Congress has prescribed the standards by which Social Security disability benefits may be awarded. "Disability" under the Social Security Act means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Judicial review of the final decision of the Commissioner is restricted to a determination of whether the decision is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *see also Quals v. Apfel*, 158 F.3d 425, 427 (8th Cir. 1998); *Gallus v. Callahan*, 117 F.3d 1061, 1063 (8th Cir. 1997); *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989). Substantial evidence means more than a mere scintilla; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richard v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 220 (1938)). In determining whether evidence is substantial, a court must also consider whatever is in the record that fairly detracts from its weight. *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999); *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

A court, however, may not reverse merely because substantial evidence would have supported an opposite decision. *See Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000); *see also Gaddis v. Chater*, 76 F.3d 893, 895 (8th Cir. 1996). "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome. . . or because we would have decided the case differently." *Roberts*, 222 F.3d at 468 (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* Therefore, this Court's review of the ALJ's factual determinations is deferential, and does not re-weigh the evidence nor review the factual record de novo. *See Flynn v. Chater*, 107 F.3d 617, 620 (8th. Cir. 1997); *Roe v. Chater*, 92 F.3d 672, 675 (8th. Cir. 1996). The Court must "defer heavily to the findings and conclusions of the SSA." *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

## IV. CONCLUSION OF LAW

**1. Fatigue as a severe physical impairment**

Hocking first argues that the ALJ's finding that her fatigue-related impairments were not severe is not supported by substantial evidence in the record. ECF No. 9 at 9–10. While Hocking acknowledges that fatigue in and of itself cannot be found to affect a claimant's ability to perform work related activities, she argues that the ALJ should have included her fatigue-related impairments as a severe impairment at step two. *Id.* at 9–10. The Commissioner in turn argues that the ALJ properly found that Hocking's fatigue-related impairments were not severe at step two, and that any error at step two was harmless. *See* ECF No. 12 at 8–9.

6

At step two, the ALJ must determine "whether the claimant has an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007); *accord* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521, 416.920(a)(4)(ii). If an impairment only amounts to a "slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities," then the impairment is "not severe." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). The claimant bears the burden of demonstrating that his impairment is severe. *Id.* "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard . . . ." *Id.* (citation omitted); *see also Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (finding that a claimant's condition of migraine headaches did not constitute a severe impairment where the record was void of any diagnostic testing and where the claimant worked for several years with the headache and there was no evidence that it had worsened).

"A symptom is . . . [a claimant's] own description of his or her physical or mental impairments." SSR 96-7p, 1996 WL 374186, at *2 (Soc. Sec. July 2, 1996)[1]. While "[s]ymptoms cannot be measured objectively through clinic or laboratory diagnostic techniques[,] . . . their effects can often be clinically observed." *Id.* at *6. Symptoms such as pain, fatigue, shortness of breath, weakness, or nervousness are however "not enough in [themselves] to establish the existence of physical or mental impairment or that the individual is disabled." *Id.*

---

[1] Social Security Ruling ("SSR") 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individuals Statements*, was superseded by SSR 16-3p, *Titles II and XVI: Evaluations of Symptoms of Disability Claims* on March 16, 2016. *See* 2016 WL 1119029, at *2 (Soc. Sec. Mar. 16, 2016). However, this matter was decided by the ALJ before that ruling went into effect.

On November 5, 2013, Hocking presented to Randall Millikan, M.D., at Essentia Health, on the request of her primary care physician. AR 295. Dr. Millikan was asked to assess the possible relationship between Hocking's lack of concentration and inability to complete work with the treatment she received for breast cancer thirty years ago. *Id.* After examining Hocking, Dr. Millikan opined that while chemotherapy may have played a role, that he suspected there were other stressors. AR 297. He stated that he "thought it was a bit of a stretch to believe that the [chemotherapy] she got 30 years ago is a primary driver of her major symptoms now." *Id.* The state agency medical consultants similarly found that Hocking's fatigue was not a severe impairment. *See* AR 82–87, AR 89–99. Additionally, Hocking's functional report showed that she lived alone in a cabin in the woods, cared for multiple sled dogs, completed household chores, and had no issues driving, shopping, or completing personal care tasks. AR 95.

Here, the ALJ found that the only severe impairments Hocking suffered from were depression, anxiety disorder, and mild cognitive disorder. *See* AR 29. The ALJ noted that Hocking alleged she suffered fatigue as a result of her thyroid and cancer treatments, but found that the medical records showed that Hocking's fatigue was unlikely the result of her chemotherapy from thirty years ago, and that the opinions of the state agency medical consultants did not support a finding of any physical impairments. AR 30. Accordingly, we find that there is substantial evidence in the record to support the ALJ's conclusion that Hocking's fatigue was not a severe physical impairment.

**2. Hocking's depression and anxiety**

Hocking also argues that substantial evidence in the record does not support the ALJ's finding that she suffers from depression or anxiety. ECF No. 9 at 11. The Commissioner asserts that

8

Hocking's argument lacks relevance because she does not indicate how she was harmed by the ALJ's determination. ECF No. 12 at 10.

"To show an error was not harmless, [the claimant] must provide some indication that the ALJ would have decided differently if the error had not occurred." *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012); *see also Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008) (finding that since the claimant did not show that the ALJ would have decided differently that the error was harmless). Because the ALJ's alleged error with regard to Hocking's depression and anxiety would not have resulted in a different conclusion, the Court rejects this argument.

### 3. Weight assigned to medical opinions

Hocking asserts that the ALJ erred in assigning little weight to the opinions of her provider Sandra L. Stover, M.D. ECF No. 9 at 11–14.

Dr. Stover on numerous occasions opined that Hocking had fatigue and was unable to perform daily living activities. *See* AR 362. Moreover, in her notes to Dr. Millikan and Dr. Sharland, she stated that Hocking had severe issues with fatigue and difficulty maintaining energy. *See* AR 355, AR 345. Dr. Stover also opined that Hocking had fatigue due to her thyroid cancer and subsequent thyroid treatment. *See* AR 381.

"It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2011). Generally, a "treating physician's opinion is entitled to controlling weight," so long as it is "supported by medically acceptable techniques and is not inconsistent with substantial evidence in the record." *Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016) (citing *Hamilton v. Astrue*, 518 F.3d 607, 610 (8th Cir. 2008)). But even the "[o]pinions of treating physicians . . . may be given limited weight if

9

they are . . . inconsistent with the record." *Id*. (citing *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015)). Regardless of how much weight the ALJ affords a treating physician's opinion, the ALJ must "always give good reason" for the weight given. 20 C.F.R. § 404.1527(d)(2). Failure to provide good reason for discrediting a treating physician's opinion is grounds for remand. *See* 20 C.F.R. § 404.1527(c)(2).

Here, the ALJ gave little weight to Dr. Stover's opinions because they were not supported by the medical observations of the other physicians or the lab testing which showed that Hocking's thyroid was stable or just slightly off mark with adjusted medication. AR 37. The ALJ specifically noted that it was suggested that depression was the basis of Hocking's fatigue, and that Dr. Millikin's opinion supported the finding that Hocking's fatigue was not based on her cancer treatment. *Id.* Because the ALJ gave good reason for discrediting Dr. Stover's opinion, this Court finds that the ALJ did not err in assigning little weight to Dr. Stover's opinions.

### 4. ALJ's RFC determination

Hocking's also asserts that substantial evidence does not support the ALJ's RFC determination that she is capable of working at all exertional levels with only some non-exertional limitations. *See* AR 31. Specifically, Hocking argues that the ALJ failed to take into account the length of time it takes her to perform daily living activities and failed to include her cognitive deficits in her RFC. ECF No. 9 at 15.

A claimant's RFC is what they are capable of despite their limitations. 20 C.F.R. § 404.1545. "It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and other, and claimant's own description of [her] limitations." *Pearsall*, 274 F.3d at 1217. This Court's review of an ALJ's factual

determination is deferential, and it neither re-weighs the evidence, reviews the factual record *de novo*, *see Flynn*, 107 F.3d at 617, nor reverses when an ALJ's decision falls within a reasonable "zone of choice." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). If the ALJ's decision is supported by substantial evidence in the record, this Court cannot reverse simply "because substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently." *Roberts*, 222 F.3d at 468.

In making her determination, the ALJ considered all of the medical evidence, as well as Hocking's claim that she had low energy and struggled to complete her daily living activities. The ALJ, however, found that Hocking's daily activities did not support her allegations of disabling symptoms and limitations. AR 37. The record shows that Hocking lives alone in a cabin in the woods, independently attends to her personal care, prepares her own meals, drives twenty miles into town twice a week, washes her laundry, performs lawn work, exercises seven days a week, and takes care of her sled dogs. AR 57–59, 178–86, 197–204, 267. With regard to her cognitive abilities, Hocking was assessed normal across the vast majority of cognitive measures and exhibited only mild difficulties with memory acquisition. AR 384. Based on this, the Court finds that the ALJ's RFC determination is supported by substantial evidence in the record. Therefore, we affirm the ALJ's decision denying Hocking's application for DIB, and grant the Commissioner's motion for summary judgment.

## VI. ORDER

Based upon the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Hocking's motion for summary judgment (ECF No. 8) is **DENIED**;

2. The Commissioner's motion for summary judgment (ECF No. 11) is **GRANTED**;

3. The Commissioner's decision is **AFFIRMED** and the case is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: August 28, 2018        *s/Franklin L. Noel*
                              FRANKLIN L. NOEL
                              United States Magistrate Judge